# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FARD ABDUR RAHMAN DICKERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1528** |
| **SHERIFF MARLIN GUSMAN,**<br>**ORLEANS PARISH SHERIFF'S**<br>**MEDICAL DEPARTMENT, DR. GRAY** | **SECTION "A"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On July 16, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 6. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

I.   **Factual Background**

   A.   **The Complaint**

The plaintiff, Fard Abdur Rahman Dickerson ("Dickerson"), is an inmate currently incarcerated in the Orleans Parish Prison system ("OPP").[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, the OPP medical department, and Dr. Gray, a physician at OPP, alleging denial of access to certain religious services and inadequate medical care.

Dickerson alleges that he is not allowed to attend Jumah and other Islamic services while he is housed in OPP. He claims that inmates will attack him if he tries to pray his Salat. He also claims that, on August 8, 2011, he spoke with Sheriff Gusman about his prayer time. The Sheriff reportedly told Dickerson that he could not allow Islamic congregational prayer.

Dickerson also alleges that, prior to his incarceration, he was receiving psychiatric medication from Dr. Robinson at the homeless clinic's St. Vincent de Paul Pharmacy. He has signed four release forms for the prison to obtain his medical records, and he still has been denied the medication since his incarceration on May 2, 2012. He also claims that he has not received his heart medicine, nasal spray or "Nasopen," a medication for back pain and extreme hip pain. He claims that Dr. Gray at OPP told him to just file a complaint because he could not tell her what was wrong with him. Dickerson seeks compensatory damages in the amount of $10,000.00 for his pain and suffering and $34,000.00 for violation of his constitutional rights, and punitive damages in the amount of $100,000.00.

---

[3]Rec. Doc. No. 1.

### B. The *Spears* Hearing

Dickerson testified that he is 36 years old and was taken to OPP on May 12, 2012, by a bounty hunter after he missed court on his pending charge for burglary of an inhabited dwelling from February 10, 2011. He expected to be tried on that charge on August 20, 2012. Dickerson complained that he is not able to practice Islam and has been denied medication he was receiving before his incarceration. He claims that he filed grievances at OPP which went unanswered.

Dickerson stated that he is not allowed to congregate with other Islamic inmates for Jumah services and his Salat prayer time. He complains that he does not have a proper place to pray, because he is disturbed by other inmates when he tries to pray in his cell. He also complains that the Chaplain's office does not have a Koran for him to borrow. He claims that during a prior incarceration, when he was housed in Tent 3, he was attacked by an inmate when he tried to pray. During this incarceration, where he is housed in Tent 1, he has not been attacked, although other inmates disturb him when he tries to pray between the bunks in the cell. He also claims that other inmates take his clothes when he is in the shower and one inmate confronted him while he sat on the toilet, because Muslim men do not stand to use the facilities.

He further testified that he tries to pray when he can. He also joins another "Muslim brother" outside near the gate to Tent 2 and they pray together through the fence. He stated that he spoke to Sheriff Gusman in 2011 during his prior incarceration and again after his 2012 arrest. The Sheriff said that he was not able to allow the Muslim inmates to congregate for prayer. Dickerson said that the Sheriff did not provide a reason for this. He also told the sheriff about his medical complaints.

Dickerson further testified that, prior to this incarceration, he was diagnosed on the street with high blood pressure, hypertension, anxiety and depression. He was also found to be pre-

diabetic, an issue he has never followed up on and has not reported to the prison. Dr. Kramer at the Cherokee Pontchartrain Behavioral Health Center prescribed medication including Vistaril[4] for his high blood pressure, anxiety and depression. He also received prescriptions for Naproxin[5] and nose spray from Dr. Robinson at the homeless clinic. The Naproxin was for lower back and hip pain caused by sleeping on concrete while he was homeless before his arrest in May. He was referred by the Cherokee Pontchartrain Center to the Central City Behavioral Clinic for follow-up with Dr. Calhoun, but he missed that appointment when he was incarcerated.

After his arrival at OPP, he filled out numerous medical release forms for the prison and for his trial attorneys. He still has not received the medication he was getting from the outside clinics. He even tried to get his homeless counselor to re-fill his prescriptions and send them to him in the jail to no avail. He indicated that he is seeing a social worker, Marvin Thibodeaux, at the prison in connection with his anxiety and depression. In spite of this, he also claimed that no one responded to his sick call complaint about depression.

He further stated that he advised prison officials that he had high blood pressure when he was arrested, and his pressure was found to be normal at that time. He was examined by the defendant, Dr. Gray, on May 15, 2012, and she told him to file a complaint because she would not treat him. She told him that she was the trained doctor and he could not tell her what was wrong with him.

He conceded that, in May, 2012, the medical unit did provide him with ibuprofen and "hctz"[6] for his high blood pressure. He claims that he ran out of those pills after taking a lot of them when

---

[4] A brand name for hydroxyzine pamoate used to treat anxiety. *Physician's Desk Reference*, p. 122 (66th Ed. 2012) ("*PDR*").

[5] Used in the treatment of osteoarthritis, rheumatoid arthritis, gout and pain. *PDR*, p. 124.

[6] Hydrochlorothiazide is a medication commonly used in the treatment of hypertension. *PDR*, p. 122.

he became scared by the chest pains he experienced after the fight. He has not asked for nor received more pills. He also did not recall whether his blood pressure has been rechecked.

Since May, he claims to have written six or seven sick call complaints about the chest pains. He also wrote to the psychiatrist about his anxiety and depression. He was seen a few weeks prior to this hearing by Nurse King for complaints of chest pain after he was involved in a fight with another inmate. She then performed an EKG, for which Dickerson claims he has not seen results. He later spoke with another nurse who told him to fill out another sick call and be more specific with his complaints if he believes he may have broken ribs.

Dickerson stated that he is suing the medical department for pain and suffering because he did not receive his medication. He seeks compensation in the form of punitive damages, civil damages, monetary damages and pain and suffering.

At the close of the hearing, the Court requested that counsel for the defendants check into whether Dickerson's blood pressure has been checked since May. Counsel agreed and advised that he would ask Dr. Gore to evaluate Dickerson for his complaints. Dickerson also advised the Court that he would send to the Court copies of his grievances and other documentation discussed at the hearing. As of this writing, the Court has not received the documents from Dickerson.

## II.     Standards of a Review for Frivolousness

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 326 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d

114, 115-16 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (superseded by statute on other grounds); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v.Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992).

**III.    Analysis**

Dickerson claims to have been a pretrial detainee at the time of the events challenged here. As a pretrial detainee, his constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State and its actors to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, Dickerson must show that the official acted with deliberate indifference to his constitutional rights. *Id*. at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . ." The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting, e.g., *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Thus, although the distinction is primarily one of formality, in order to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis that is identical to that applied in Eighth Amendment cases. *Hare*, 74 F.3d at 643-44.

### A. <u>Claims Against the Medical Department</u>

Dickerson has sued the medical department at OPP for pain and suffering because he has not received his medication prescribed by doctors prior to his arrest. This claim is urged in addition to the claims he has against Dr. Gray and Sheriff Gusman.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights while acting under color of state law. 42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether these defendants can be sued.[7] Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24.

Thus, under federal law, a county (or parish) prison facility is not a "person" within the meaning of Rule 17. *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993). The Court finds no law, constitutional, statutory, or otherwise, that defines a parish jail or any unit or department therein to be a person with the capacity to sue or to be sued. A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing St. Tammany Parish Jail with prejudice); *Dale v. Bridges*, No. 96-3088, 1997 WL 810033, at *1 n.1 (N.D. Tex. Dec. 22, 1997) (county jail is not a jural entity capable of being sued), *aff'd*, 154 F.3d 416, 1998 WL 526620 (5th Cir. July 21, 1998).

Thus, the Medical Department at OPP is not a proper defendant in this case. Dickerson's claims against the Medical Department should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

---

[7]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *See* Fed. R. Civ. P. 17(b).

### B. Claims Against Sheriff Gusman

Dickerson has named Sheriff Gusman as a defendant. Under a broad reading, the Sheriff is so named because Dickerson is being denied the ability to participate in congregational prayer with other Muslims. He claims that he spoke to Sheriff Gusman on two occasions about his inability to pray and the lack of congregational prayer. He claims that the Sheriff told him simply that congregational prayer was not allowed.

Supervisory officials like Sheriff Gusman cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1210 (5th Cir. 1979). The Sheriff may only be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference as set forth above.

In addition, supervisory liability may exist where the alleged constitutional injury is a result of a directive, supervised training or activity, or other policy set forth by the Sheriff. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Dickerson has alleged facts at least sufficient to show that Sheriff Gusman was made aware of his difficulties with prayer and that he denied his request for or had a policy against congregational prayer for Muslims without providing him with reasons therefor.

It is well established that "inmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela*, 684 F.3d 564, 571-72 (5th Cir. 2012) (quoting *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (footnotes omitted)). A restriction "impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*,__ U.S. ___, 132 S. Ct. 1510, 1515 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

To evaluate the reasonableness of a prison restriction, the courts consider the following factors: (1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's "rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91. "A court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004) (internal quotation marks and citation omitted). Due regard also must be given to the decisions of prison officials, because "'prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (omission and alteration in original) (citing *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)).

In the facts as alleged, the Court can not find that Sheriff Gusman provided Dickerson with a legitimate governmental reason for the restriction or prohibition against congregational prayer for Muslims or other accommodations, such as providing a Koran or place to do individual prayer, that Dickerson claims are made available to other religious groups.

For these reasons, the Court does not find that Dickerson's claims against Sheriff Gusman are frivolous as presented in his complaint as amended by the *Spears* testimony. This claims will proceed forward.

### C. Claims Against Dr. Gray

Dickerson alleges that he sought medical attention from Dr. Gray in his efforts to obtain his prescription medication previously provided to him by the clinics before his arrest. He claims that Dr. Gray refused to address his concerns and told him to sue her.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs are actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 440 Fed. App'x. 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff' Dep't*, 306 F.3d 515, 517-18 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104 (internal quotation marks omitted). This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)).

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 193 ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Dickerson alleges that Dr. Gray wholly rejected his request for medical evaluation of and medication for his previously diagnosed ailments. Dickerson's assertions in the complaint and at the *Spears* Hearing are sufficient to at least allege that he was denied constitutionally adequate medical care by Dr. Gray. While a doctor's decision whether to provide additional treatment and as to which medications to prescribe is a matter for medical judgment, *see Gobert*, 463 F.3d at 346, the alleged refusal to consider his complaints and provide him with any health evaluation or care appears to state a cognizable claim at this stage of the litigation. His claims of denial of adequate medical care against Dr. Gray are not frivolous as stated and should be allowed to proceed forward.

## IV. Recommendation

It is therefore **RECOMMENDED** that Dickerson's claims under 42 U.S.C. § 1983 against the OPP Medical Department be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Dickerson's claims that his right to free exercise of religion urged against Sheriff Gusman and of denial of adequate medical care against Dr. Gray shall proceed forward.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[8]

New Orleans, Louisiana, this 2nd day of October, 2012.

> **KAREN WELLS ROBY**
> **UNITED STATES MAGISTRATE JUDGE**

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.