UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FARD ABDUR RAHMAN DICKERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1528** |
| **SHERIFF MARLIN GUSMAN,**<br>**ORLEANS PARISH SHERIFF'S**<br>**MEDICAL DEPARTMENT, DR. GRAY** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On July 16, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 6. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

I.   **Factual Background**

   A.   **The Complaint**

The plaintiff, Fard Abdur Rahman Dickerson ("Dickerson"), is an inmate currently incarcerated in the Orleans Parish Prison system ("OPP").[3]  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, the OPP medical department, and Dr. Gray, a physician at OPP, alleging denial of access to certain religious services and inadequate medical care.

Dickerson alleges that he is not allowed to attend Jumah and other Islamic services while he is housed in OPP.  He claims that inmates will attack him if he tries to pray his Salat.  He also claims that, on August 8, 2011, he spoke with Sheriff Gusman about his prayer time.  The Sheriff reportedly told Dickerson that he could not allow Islamic congregational prayer.

Dickerson also alleges that, prior to his incarceration, he was receiving psychiatric medication from Dr. Robinson at the homeless clinic's St. Vincent de Paul Pharmacy.  He has signed four release forms for the prison to obtain his medical records, and he still has been denied the medication since his incarceration on May 2, 2012.  He also claims that he has not received his heart medicine, nasal spray or "Nasopen," a medication for back pain and extreme hip pain.  He claims that Dr. Gray at OPP told him to just file a complaint because he could not tell her what was wrong with him.  Dickerson seeks compensatory damages in the amount of $10,000.00 for his pain and suffering and $34,000.00 for violation of his constitutional rights, and punitive damages in the amount of $100,000.00.

---

[3]Rec. Doc. No. 1.

**B.     The *Spears* Hearing**

Dickerson testified that he is 36 years old and was taken into to OPP on May 12, 2012, by a bounty hunter after he missed court on his pending charge for burglary of an inhabited dwelling from February 10, 2011. He expected to be tried on that charge on August 20, 2012. Dickerson complained that he is not able to practice Islam and has been denied medication he was receiving before his incarceration. He claims that he filed grievances at OPP which went unanswered.

Dickerson stated that he is not allowed to congregate with other Islamic inmates for Jumah services and his Salat prayer time. He complains that he does not have a proper place to pray, because he is disturbed by other inmates when he tries to pray in his cell. He also complains that the Chaplain's office does not have a Koran for him to borrow. He claims that during a prior incarceration, when he was housed in Tent 3, he was attacked by an inmate when he tried to pray. During this incarceration, where he is housed in Tent 1, he has not been attacked, although other inmates disturb him when he tries to pray between the bunks in the cell. He also claims that other inmates take his clothes when he is in the shower and one inmate confronted him while he sat on the toilet, because Muslim men do not stand to use the facilities.

He further testified that he tries to pray when he can. He also joins another "Muslim brother" outside near the gate to Tent 2 and they pray together through the fence. He stated that he spoke to Sheriff Gusman in 2011 during his prior incarceration and again after his 2012 arrest. The Sheriff said that he was not able to allow the Muslim inmates to congregate for prayer. Dickerson said that the Sheriff did not provide a reason for this. He also told the sheriff about his medical complaints.

Dickerson further testified that, prior to this incarceration, he was diagnosed on the street with high blood pressure, hypertension, anxiety and depression. He was also found to be pre-

diabetic, an issue he has never followed up on and has not reported to the prison. Dr. Kramer at the Cherokee Pontchartrain Behavioral Health Center prescribed medication including Vistaril[4] for his high blood pressure, anxiety and depression. He also received prescriptions for Naproxin[5] and nose spray from Dr. Robinson at the homeless clinic. The Naproxin was for lower back and hip pain caused by sleeping on concrete while he was homeless before his arrest in May. He was referred by the Cherokee Pontchartrain Center to the Central City Behavioral Clinic for follow-up with Dr. Calhoun, but he missed that appointment when he was incarcerated.

After his arrival at OPP, he filled out numerous medical release forms for the prison and for his trial attorneys. He still has not received the medication he was getting from the outside clinics. He even tried to get his homeless counselor to re-fill his prescriptions and send them to him in the jail to no avail. He indicated that he is seeing a social worker, Marvin Thibodeaux, at the prison in connection with his anxiety and depression. In spite of this, he also claimed that no one responded to his sick call complaint about depression.

He further stated that he advised prison officials that he had high blood pressure when he was arrested, and his pressure was found to be normal at that time. He was examined by the defendant, Dr. Gray, on May 15, 2012, and she told him to file a complaint because she would not treat him. She told him that she was the trained doctor and he could not tell her what was wrong with him.

He conceded that, in May, 2012, the medical unit did provide him with ibuprofen and "hctz"[6] for his high blood pressure. He claims that he ran out of those pills after taking a lot of them when

---

[4]A brand name for hydroxyzine pamoate used to treat anxiety. PHYSICIAN'S DESK REFERENCE, p. 122 (66th ed. 2012) ("PDR").

[5]Used in the treatment of osteoarthritis, rheumatoid arthritis, gout and pain. PDR, p. 124.

[6]Hydrochlorothiazide is a medication commonly used in the treatment of hypertension. PDR, p. 122.

he became scared by the chest pains he experienced after the fight. He has not asked for nor received more pills. He also did not recall whether his blood pressure has been rechecked.

Since May, he claims to have written six or seven sick call complaints about the chest pains. He also wrote to the psychiatrist about his anxiety and depression. He was seen a few weeks prior to this hearing by Nurse King for complaints of chest pain after he was involved in a fight with another inmate. She then performed an EKG, for which Dickerson claims he has not seen results. He later spoke with another nurse who told him to fill out another sick call and be more specific with his complaints if he believes he may have broken ribs.

Dickerson stated that he is suing the medical department for pain and suffering because he did not receive his medication. He seeks compensation in the form of punitive damages, civil damages, monetary damages and pain and suffering.

## II.     Procedural Background

The record reflects that on July 30, 2012, Dickerson moved for appointment of counsel.[7] After receiving supplemental information from Dickerson, the undersigned Magistrate Judge denied the motion on September 13, 2012.[8]

Thereafter, on October 3, 2012, the undersigned Magistrate Judge also issued a Partial Report and Recommendation setting forth the Court's statutory frivolousness review of Dickerson's claims.[9] Therein, the Court recommended that Dickerson's claims against the OPP Medical Department be dismissed with prejudice as frivolous and for failure to state a claim for which relief

---

[7] Rec. Doc. No. 7.

[8] Rec. Doc. No. 13.

[9] Rec. Doc. No. 15.

can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e. The Court further recommended that the remaining claims that his right to free exercise of religion against Sheriff Gusman and for denial of adequate medical care against Dr. Gray be allowed to proceed.

On November 7, 2012, the District Judge entered an Order and Judgment adopting the report and ordering dismissal of the claims against the OPP Medical Department and allowing the remaining claims to proceed.[10]

As will be further discussed, these prior orders of the Court were mailed to Dickerson at his address of record and each was returned to the Clerk of Court marked as undeliverable.

### III. Standard of Review under Fed. R. Civ. P. 41(b)

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court. A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b). In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order. *See, e.g.*, *Markwell v. County of Bexar*, 878 F.2d 899, 902 (5th Cir. 1989); *Price v. McGlathery*, 792 F.2d 472, 474-75 (5th Cir. 1986); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706, 708-09 (5th Cir. 1976).

In this case, the plaintiff is without counsel and is responsible for the prosecution of his case. A *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *Beard v. Experian Information Solutions*

---

[10]Rec. Doc. Nos. 17, 18.

*Inc.*, 214 Fed. App'x 459, 462 (5th Cir. 2007). A pro se litigant who fails to comply with procedural rules has the burden of establishing excusable neglect, which is a strict standard requiring proof of "more than mere ignorance." *See Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (quotation omitted); *Birl*, 660 F.2d at 593.

**IV.   Analysis**

As mentioned above, on September 13, 2012, the Court issued an order denying Dickerson's Motion for Appointment of Counsel.[11] A copy of the Order was mailed by the Clerk of Court to Dickerson at his address of record at the Orleans Parish Prison.

On October 1, 2012, the envelope containing the Court's September 13, 2012, Order was returned to the Clerk of Court stamped "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD."[12] The returned envelope also bears a separate handwritten notation which simply states "Checked 9/20/12 Released to St. Tammany."[13]

Shortly thereafter, on October 3, 2012, the Court issued the Partial Report and Recommendation outlined above.[14] A copy of the Court's ruling was mailed by the Clerk of Court to Dickerson at the OPP address he provided. That envelope was also returned to the Clerk of Court on October 19, 2012, marked "Return to Sender" and "RO 9/20/12 St. Tammany."[15]

---

[11]Rec. Doc. No. 13.

[12]Rec. Doc. No. 14.

[13]*Id*.

[14]Rec. Doc. No. 15.

[15]Rec. Doc. No. 16. The Court recognizes that RO is often used by prison officials as an abbreviation for rolled-out.

7

Thereafter, on November 7, 2012, the District Judge issued the Order and Rule 54(b) Judgment following the Partial Report and Recommendation.[16]  Copies of these rulings also were mailed by the Clerk of Court to Dickerson at the OPP address.  On December 18, 2012, the envelope containing both of these rulings was returned to the Clerk of Court stamped "RETURN TO SENDER" with the markings "R/O 2324038."[17]

The Court's prior rulings were mailed to Dickerson at the only address he has provided.  Dickerson is no longer housed in OPP, and he has failed to provide the Court with his current contact information as required by L.R. 11.1.  Dickerson was made aware of his continuing obligation to keep the Court informed of his whereabouts as reflected in paragraph VI on the last page of his form Complaint, where he signed the Plaintiff's Declaration on May 22, 2012.[18]

Contrary to these mandates, Dickerson has not notified the Court of his current address, and he otherwise has not contacted the Court about his case since August 26, 2012.[19]  In accordance with L.R. 41.3.1, Dickerson's failure to provide his current address within 35 days of the Court's mail having been returned is cause for dismissal of his complaint for failure to prosecute.  As shown above, the first of the returned mail was received by the Clerk of Court on October 1, 2012.

Dickerson has not made the necessary effort to prosecute this case.  Accordingly, dismissal with prejudice of his complaint is proper under Fed. R. Civ. P. 41(b) for his failure to prosecute.

---

[16]Rec. Doc. Nos. 17, 18.

[17]Rec. Doc. No. 19.

[18]Rec. Doc. No. 1, p. 8.

[19]Rec. Doc. No. 12 (filed 9/6/2012, dated 8/26/12).

## V.     Recommendation

It is therefore **RECOMMENDED** that Dickerson's 42 U.S.C. § 1983 complaint against the defendants, Sheriff Marlin Gusman and Dr. Gray, be **DISMISSED WITH PREJUDICE** for failure prosecute pursuant to Fed. R. Civ. P. 41(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[20]

New Orleans, Louisiana, this 7th day of March, 2013.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[20]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.